IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER BARTLETT,                                No. 3:14-cv-01084-HZ

                    Plaintiff,                       OPINION & ORDER

        v.

CAROLYN COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

George J. Wall
LAW OFFICES OF GEORGE J. WALL
1336 E. Burnside, Suite 130
Portland, OR 97214

        Attorney for Plaintiff

Billy J. Williams
Acting United States Attorney, District of Oregon
Ronald K. Silver
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE, DISTRICT OF OREGON
1000 SW Third Avenue, Suite 600
Portland, OR 97204

John C. Lamont
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Plaintiff Christopher Bartlett brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c) (3)). For the reasons that follow, the Commissioner's decision is reversed and remanded for further proceedings.

PROCEDURAL BACKGROUND

      Plaintiff applied for SSI[1] on February 11, 2011, alleging an onset date of December 31, 2009. Tr. 15[2]. His application was denied initially and on reconsideration. Tr. 153-162, 163-171. On February 25, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 37-68. On March 15, 2013, the ALJ found Plaintiff not disabled. Tr. 15-30. The Appeals Council denied review. Tr. 1-4.

FACTUAL BACKGROUND

      Plaintiff alleges disability based on bipolar disorder, chronic obstructive pulmonary disorder, intermittent explosive anger disorder, chronic pain, post-traumatic stress disorder, and anxiety disorder. Tr. 238. He testified that because of his illnesses, work is "extremely hard for

---

[1] Plaintiff also applied for disability insurance benefits (DIB) under Title II of the Social Security Act. However, Plaintiff withdrew his DIB application at the administrative hearing. Tr. 39.
[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

[him] to do." Tr. 43. He also testified that he has trouble being around people and that he actively avoids others. Tr. 58.

Plaintiff was thirty-seven years old at the time of the administrative hearing. Tr. 39. He attended high school through the twelfth grade and then dropped out and got his GED. Tr. 42. He has past work experience as a merchandiser, telemarketer, painter, service station attendant, and automobile salesman. Tr. 62. Because the parties are familiar with the medical and other evidence in the record, the Court refers to any additional relevant facts in the discussion section below.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See, e.g., Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to

preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d),

416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner

proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§

404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the

Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date. Tr. 17. Next, at steps two and three, the ALJ determined that

Plaintiff has the severe impairment of an affective disorder, but that the impairment did not meet

a listed impairment. Tr. 17-19. At step four, the ALJ concluded that Plaintiff has the residual

functional capacity to perform a full range of work at all exertional levels but with the following

non-exertional limitations: occasional co-worker contact, occasional interaction with the public,

and performance of simple, routine tasks. Tr. 21. With this residual functional capacity, the ALJ

determined that Plaintiff is unable to perform any of his past relevant work. Tr. 27. However, at

step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant

numbers in the economy, such as linen room worker, nursery worker, and pressure washer. Tr.

29. Thus, the ALJ determined that Plaintiff is not disabled. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by: (1) failing to properly consider the opinions of Plaintiff's vocational rehabilitation specialists, (2) rejecting the opinion of examining psychologist Dr. Causeya, and (3) failing to find Plaintiff's psychotic disorder severe at step two of the sequential analysis.

I.    **"Other Source" Opinions of Vocational Rehabilitation Specialists**

Plaintiff contends that the ALJ erred by failing to properly consider the opinions of

Plaintiff's vocational rehabilitation specialists, Paul See and Julia Covert.

Non-medical, vocational evidence as to a claimant's symptoms constitutes "other source"

evidence which is competent evidence that an ALJ must take into account, unless he or she

expressly determines to disregard such testimony and gives reasons germane to each witness for

doing so. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010); see also 20

C.F.R. § 404.1545 ("We will also consider descriptions and observations of your limitations

from your impairment(s), including limitations that result from your symptoms, such as pain,

provided by you, your family, neighbors, friends, or other persons.").

Plaintiff sought employment help at the Office of Vocational Rehabilitation Services in

Portland, Oregon in 2011. Tr. 516-36. Julia Covert[3], vocational counselor, identified the

following impediments to Plaintiff securing employment: inability to interact in a socially

acceptable manner at work or with others; inability to carry-out activities required for

independent living or work; inability to care for self and own environment or manage physical,

emotional, or safety needs; difficulty demonstrating behavior and interaction appropriate to

worksite, particularly when psychotic symptoms emerge; spotty, intermittent work history;

difficulty appropriately accepting supervisory monitoring or criticism; history of poor decision-

making; lack of awareness of the consequences of his behavior; and inability to recognize and

acknowledge problems. Tr. 518.

---

[3] Plaintiff argues that the ALJ "failed to discuss Ms. Covert whatsoever," because the ALJ did not
specifically name Ms. Covert in his opinion. Pl.'s Br. 13. However, the ALJ cites a "counselor" at
Oregon's Department of Vocational Rehabilitation services, "Mr. See and his colleagues," and the
"vocational rehabilitation specialists." Tr. 23-24. Viewed in context of the record as a whole, it is clear
that the ALJ considered Ms. Covert's opinion.

Paul See, MBA, MA, CRC, from Rehabilitation Consultants, provided Plaintiff with a "community based work experience." Tr. 523. Mr. See noted that Plaintiff had "a lot of potential" but would require "some steps to return to work." Tr. 527. Mr. See opined that Plaintiff could not maintain gainful employment. Id. Mr. See listed as barriers to Plaintiff's employment the following factors: noticeable anxiety, irritability, physical limitations and inability to complete all work hours, tardiness, and criminal history. Id. Mr. See believed that part-time work could be possible in the future. Id.

The ALJ gave "little weight" to the statements of Ms. Covert and Mr. See, because they appeared "to be unfamiliar with the Social Security Disability Regulations or they lack a fundamental understanding of the purposes of the program." Tr. 24. The ALJ based this conclusion on the fact that Ms. Covert and Mr. See expressed opinions regarding Plaintiff's disability and ability to work, determinations which are reserved exclusively to the Commissioner of Social Security. Tr. 24; see also SSR 96-5p. However, Ms. Covert and Mr. See's lack of familiarity with the Social Security Disability Regulations is not a germane reason for rejecting their testimony.

Defendant argues that, in weighing vocational rehabilitation specialists' opinions, an ALJ may consider the extent to which the specialists understand "our disability programs and their evidentiary requirements." Def.'s Br. 7 (citing 20 C.F.R. 416.927(c)(6)). However, the regulation the Defendant cites  explains how an ALJ weighs medical opinions, not "other source" opinions such as those of  vocational rehabilitation specialists. Defendant does not cite, and this Court does not find, any regulation or social security ruling dictating that a lack of familiarity with the social security program can be used as a basis to discount "other source" testimony. For example, SSR 06-03,  Titles II & Xvi: Considering Opinions & Other Evidence

<u>from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering</u>

<u>Decisions on Disability by Other Governmental & Nongovernmental Agencies</u>, (S.S.A. Aug. 9,

2006), states that opinions from "non-medical sources" who have seen the individual in their

professional capacity should be evaluated by using the following factors:

> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

Notably, degree of familiarity with the social security program is not a listed factor. Because the

ALJ did not provide any other germane reason for rejecting Ms. Covert and Mr. See's opinions,

the ALJ erred by disregarding their testimony. Nevertheless, as discussed below, that error was

harmless.

An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability

determination." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting <u>Carmickle v.</u>

<u>Comm'r, Soc. Sec. Admin.</u>, 553 F.3d 1155, 1162 (9th Cir. 2008). The Court must "look at the

record as a whole to determine whether the error alters the outcome of the case." <u>Molina</u>, 674

F.3d at 1115. "[W]here the ALJ's error lies in a failure to properly discuss competent lay

testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless

it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could

have reached a different disability determination." <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d

1050, 1056 (9th Cir. 2006). However, "where the ALJ rejects a witness's testimony without

providing germane reasons, but has already provided germane reasons for rejecting similar

testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his

determination to those reasons.'" <u>Molina</u>, 674 F.3d at 1121 (quoting <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).

Therefore, the proper inquiry for this Court is whether the ALJ's failure to consider the opinions of Ms. Covert and Mr. See was "inconsequential," in the context of the record as a whole. <u>See</u> <u>Carmickle</u>, 533 F. 3d at 1162. The Court concludes that it was inconsequential. All of the social and cognitive limitations that Ms. Covert and Dr. See described were raised by Plaintiff or other sources in the record, and were properly rejected or discounted by the ALJ[4]. Specifically, the ALJ considered claims by Plaintiff and his advocates that he was too unstable to be around others, would not be able to get to work on time on a regular basis, would be irritable with workers and supervisors, and would not be able to concentrate on assigned tasks without constant redirection for more than one to two hours at a time. Tr. 25. The ALJ concluded that these claims were contradicted by Plaintiff's daily activities, Plaintiff's testimony that his major impediment to getting a job was his record as a felon, and Plaintiff's medical records. Tr. 26-27. Because the ALJ validly rejected all the limitations described by Ms. Covert and Mr. See, this Court determines that the ALJ's failure to provide a germane reason for rejecting the testimony of the vocational rehabilitation specialists did not alter the ultimate nondisability determination. Accordingly, the ALJ's error was harmless.

## II.    Examining Psychologist Opinion

Plaintiff contends that the ALJ failed to provide legally sufficient reasoning to support assigning "little weight" to the opinion of examining psychologist Karla Rae Causeya, Psy. D.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1164 (9th Cir. 2008). The

---

[4] Plaintiff does not challenge the ALJ's credibility finding or evaluation of other medical source and lay witness opinions.

Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. Tommasetti, 533 F.3d at 1040. It is error to ignore an examining physician's medical opinion without providing reasons for doing so. An ALJ effectively rejects an opinion when he ignores it. Smolen, 80 F.3d at 1286.

Examining psychologist Dr. Causeya evaluated Plaintiff on February 1, 2013. Tr. 640. She diagnosed Plaintiff with bipolar disorder, not otherwise specified, because she found "clear

indication of mood swings that appear to be hypomanic followed by depression." Tr. 642, 646. Dr. Causeya diagnosed Plaintiff with psychotic disorder, not otherwise specified, because of Plaintiff's paranoid thoughts and disorganized speech. Id.

Dr. Causeya noted that Plaintiff was hospitalized at age 16 or 17, due to out of control behavior. Tr. 641. He was subsequently diagnosed with bipolar disorder. Id. Based on Plaintiff's reports and his mother's reports, Dr. Causeya noted that Plaintiff has exhibited delusional thinking, fearing that others are out to get him, misinterpreting current events, and disorganized speech. Tr. 641. During the examination, Dr. Causeya observed that Plaintiff's disorganized thinking led to his speech resembling a "word salad," where his statements were disjointed or did not make any sense. Tr. 643. His attention span appeared to be disjointed. Id. However, Dr. Causeya did note that Plaintiff was easily able to subtract serial sevens from one hundred. Id.

Dr. Causeya also recorded Plaintiff's extensive history of drug use. Tr. 641. Plaintiff began using a variety of drugs at 13 or 14 years of age. Id. He was addicted at various points in his life to cocaine, heroin, methamphetamine, and marijuana. Tr. 641-42.

Dr. Causeya stated that Plaintiff was independent in all of his daily functions. Tr. 463. However, Plaintiff was moderately impaired in his ability to understand and remember what was expected of him. Tr. 645. Dr. Causeya found moderate to severe limitations in Plaintiff's sustained concentration and persistence, ability to maintain social functioning, and ability to adapt. Tr. 645-46. In addition, Dr. Causeya noted moderate to severe episodes of deterioration or decompensation in work-like settings. Tr. 646. Under the rubric used by Dr. Causeya, a "moderately severe" limitation indicates that the activity can only be engaged in "occasionally or so" during an eight-hour day, not totaling more than two hours in an eight-hour day.

Dr. Causeya concluded her evaluation by opining that Plaintiff "is not currently able to obtain and maintain gainful employment." Tr. 647. Dr. Causeya noted that Plaintiff may be able to work part-time in a supportive environment. Id. However, she recognized that Plaintiff's "Vocational Rehabilitation assessment indicated that he was not ready for . . . supportive part-time employment until he was stable and receiving Social Security disability income." Id.

As with the vocational rehabilitation specialists, the ALJ assigned little weight to Dr. Causeya's opinion because Dr. Causeya "appear[ed] to be unfamiliar with the Social Security Disability Regulations or [she] lack[ed] a fundamental understanding of the purposes of the program." Tr. 24. The ALJ noted that Dr. Causeya's conclusion that Plaintiff was unable to work was not a medical opinion but an administrative finding that required familiarity with the regulations and legal standards. Id. Unlike the vocational rehabilitation specialists, however, the ALJ was permitted to consider Dr. Causeya's understanding of disability regulations because Dr. Causeya provided a medical opinion. See 20 C.F.R. § 416.927(c)(6).

However, even if the ALJ correctly determined that Dr. Causeya lacked an understanding of Social Security regulations, the ALJ was still required to consider Dr. Causeya's medical opinion and provide "specific and legitimate" reasons for rejecting her opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). The ALJ failed to do so.

The ALJ stated that "certain aspects" of Dr. Causeya's findings actually "support the fact that the claimant can perform simple, routine tasks and jobs that require occasional co-worker and public interaction." Tr. 25. But the ALJ failed to indicate which "aspects" of Dr. Causeya's opinion supported the ALJ's conclusion about Plaintiff's abilities. The ALJ also failed to provide specific and legitimate reasons for why he did not credit Dr. Causeya's findings that Plaintiff is

moderately to severely limited in sustained concentration and persistence, ability to maintain

social functioning, ability to adapt, and ability to remember what was expected of him.

Defendant argues that substantial evidence supports the ALJ's conclusion that Dr.

Causeya's examination results are consistent with Plaintiff's ability to perform simple, routine

work with limited public contact, notwithstanding Dr. Causeya's opinion that Plaintiff is unable

to work. Def.'s Br. 10. Defendant cites the fact that Plaintiff was easily able to subtract serial

sevens from one hundred, he scored in the average range in the trail making test, and in the high

average on the Digit Span subtest of the Wechsler Adult Intelligence Scale. Id. at 11. Defendant

also argues that Dr. Causeya's opinion is undermined because she relied heavily on the

conclusions of the vocational rehabilitation specialists, whose opinions were rejected.

However, the reasons listed by Defendant are not present in the ALJ's opinion. This

Court cannot affirm a decision by an ALJ based on a *post hoc* rationalization of the ALJ's

decision. See Bray, 554 F.3d at 1225 ("Long-standing principles of administrative law require us

to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ-not

*post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.")

(citations omitted); see also Chenery Corp., 332 U.S. at 196 ("[I]n dealing with a determination

or judgment which an administrative agency alone is authorized to make, [courts] must judge the

propriety of such action solely by the grounds invoked by the agency. If those grounds are

inadequate or improper, the court is powerless to affirm the administrative action by substituting

what it considers to be a more adequate or proper basis."). Even if Defendant has accurately

captured the ALJ's line of reasoning, it is the ALJ that must explain his decision, not this Court.

Accordingly, Defendant's attempt to rationalize the ALJ's decision *post hoc* is unavailing. See,

e.g., Hopper v. Colvin, No. 6:13-CV-01525-HZ, 2014 WL 6473566, at *10 (D. Or. Nov. 14,

2014). The ALJ erred by failing to provide specific and legitimate reasons for discounting Dr. Causeya's opinion.

### III.    Psychotic Disorder Diagnosis

Plaintiff argues that the ALJ erred in failing to list Plaintiff's psychotic disorder as a severe impairment at step two of the sequential evaluation. Despite Dr. Causeya's diagnosis of Plaintiff as bipolar and suffering from a psychotic disorder, the ALJ failed to discuss the psychotic disorder diagnosis in his decision. Defendant argues that there was no error because the ALJ appropriately afforded less weight to Dr. Causeya's opinion. However, as discussed above, this Court finds that the ALJ erred by rejecting Dr. Causeya's opinion without providing specific and legitimate reasons.

At step two of the sequential analysis, the ALJ considers the severity of the claimant's impairment(s). 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting. 20 C.F.R. § 404.1521(b). In Social Security Ruling (SSR) 85–28 (available at 1985 WL 56856, at *3), the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities"; see also SSR 96–3p (available at 1996 WL 374181, at * 1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities").

The Ninth Circuit has explained that the step two severity determination is expressed "in terms of what is 'not severe.'" Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The ALJ is

14 - OPINION & ORDER

required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. Id. Importantly, as the Ninth Circuit noted, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Id. (citing Yuckert, 482 U.S. at 153–54); see also SSR 85–28 (available at 1985 WL 56856, at *2) ("[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.") (internal quotation marks omitted). When a claimant meets the step-two threshold by establishing the existence of one or more severe impairments, the ALJ then continues with the sequential evaluation process and considers the effects of all impairments, whether severe or not severe. Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996), available at 1996 WL 374184, at *5.

If a claimant prevails at step two but nevertheless contends that the ALJ omitted finding a severe impairment, the claimant must show that he suffered prejudice as a result of the ALJ's alleged error. Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). In other words, the claimant must show that, despite prevailing at step two, he was prejudiced at step three (listing impairment determination) or step five (residual functional capacity).

Here, Plaintiff argues that he was prejudiced because, as a result of the omission of the diagnosis of "psychotic disorder," the ALJ's RFC was incomplete. Specifically, Dr. Causeya opined that, because of Plaintiff's diagnoses, he would be moderately-severely limited in his "ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a constant pace without unreasonable number and length of rests." Tr. 649.

Defendant argues that any error in omitting the psychotic disorder diagnosis was harmless because the ALJ found that Plaintiff had a severe impairment of an "affective disorder," which includes bipolar disorder. According to Defendant, bipolar disorder can include delusional thinking, which was the basis for Dr. Causeya's diagnosis of psychotic disorder. In addition, Defendant argues that Plaintiff was not prejudiced by the omission of this diagnosis because the ALJ's RFC restricted him to simple, routine tasks with only occasional contact with others. Tr. 21.

However, Dr. Causeya's diagnosis of psychotic disorder was based on Plaintiff's "paranoid thoughts and disorganized speech," not just delusional thinking. Tr. 642. And, as Plaintiff notes, Dr. Causeya noted several limitations to Plaintiff's ability to work and did not distinguish between the cause of those limitations stemming from Plaintiff's bipolar disorder or his psychotic disorder. Accordingly, the Court finds that the ALJ erred and it was not harmless.

## IV.   Remand for Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138–39 (9th Cir. 2011) (quoting Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)).

The Ninth Circuit Court of Appeals has devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
> (2) the record has been fully developed and further administrative proceedings would serve no useful purpose; and
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1100-01 (9th Cir. 2014). Even if those requirements are met, the Court retains flexibility in determining the appropriate remedy. Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014). The Court "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id.

Here, the ALJ failed to provide legally sufficient reasons to reject Dr. Causeya's opinion and diagnosis.[5] However, further administrative proceedings would be useful. Dr. Causeya's opinion conflicts with the evaluations of Drs. Boyd, Henry, and Starbird. Furthermore, the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled. As the ALJ noted, Plaintiff acknowledged that a major impediment to getting a job is not the fact that he is disabled but, rather, his record as a felon. Tr. 457. In addition, in finding Plaintiff not credible, the ALJ noted many examples of his daily activities and functional abilities that suggest he may not be as limited as he claims. In sum, further administrative proceedings are necessary.

///

///

///

---

[5] As discussed above, the ALJ also failed to provide legally sufficient reasons for rejecting the opinions of the vocational rehabilitation specialists. However, that error was harmless.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is reversed and remanded for

further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated this _____5_____ day of _____August_____, 2015



_____
                MARCO A. HERNÁNDEZ
                United States District Judge